U. S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
BY \_\_11/23/2011\_\_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

---

Ruth Amy Moore.
Plaintiff,

-against-

Caledonia Central Supervisory Union,
Danville School
Defendants

Civil Action No. 2:11-cv-286

COMPLAINT AND DEMAND
FOR JURY TRIAL

---

## COMPLAINT

**COMES NOW**, Ruth Amy Moore, by and through her attorney, Aaron R. Melville, Esq. to complain against Defendants, Caledonia Central Supervisory Union and the Danville School, as follows:

### PARTIES AND JURISDICTION:

1. The plaintiff, Ruth Amy Moore, is an individual residing at 378 Back Bay Road, Milbridge, ME 04658 and was a resident of and employed in the State of Vermont while employed at the Danville School.

2. The Defendant, Caledonia Central Supervisory Union ("CCSU"), is located at P.O. Box 216 Danville, Vermont 05828

3. The Defendant, Danville School, is located at 148 Peacham Road Danville, VT 05828

4. Jurisdiction is invoked under Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12111, et seq.

### FACTS AND NATURE OF THE CASE:

5. On May 27, 2008 Ruth Amy Moore accepted a job and signed a contract with the Board of the School Directors of Danville to work as a Special Education teacher beginning on July 1, 2008 and ending June 30, 2009.

6. Mrs. Moore has been diagnosed with Post Traumatic Stress Disorder and a Panic Disorder relating to her U.S. Military Service.

7. Mrs. Moore's husband, Alfred Moore, was also an educator at the Danville School.

8. Mrs. Moore's daughter S.M. was a student at the Danville School.

9. The above mentioned contract is governed by the "Master Contract between Danville Board of School Directors and Danville Education Association Teacher Unit 2007-2010."

10. The Danville School is part of the Caledonia Central Supervisory Union.

11. The Danville School and Caledonia North Supervisory Union are required to follow the Americans with Disabilities Act.

12. From the beginning of the school year there were indications that Mrs. Moore was not being accepted and supported by employees at the school and that there were communication problems with supervisors and colleagues. Much of the communication was perceived as hostile by Mrs. Moore in that she reported insubordination by the paraeducators assigned to her and received no support from the principal, Meg Powden.

13. Six weeks into the school year, Mrs. Moore wrote a letter to Meg Powden asking for a reasonable accommodation. Meg Powden responded "this was the culture in Danville" and did not support the accommodation request.

14. Mrs. Moore had a meeting with Carlotta Simons-Perrentoni ("Carlotta") concerning conflicts with Mrs. Moore and some paraeducators. Mrs. Moore asked for Carlotta to observe the class and make suggestions on how she could improve and was informed that Carlotta did not have time to make an observation.

15. Mrs. Moore attempted to apologize for any perceived miscommunication with Mary Cassidy and Emily Clancy. Mary replied, "It's too late, you burned this bridge and you won't be here next year."

16. In Mid October Mrs. Moore met with Stan Zajko, Middle School Social Studies Teacher, to work on caseloads. He requested more than Mrs. Moore could offer. He implied a threat that if Mrs. Moore did not meet his demands that his wife would speak with Mrs. Moore's supervisor by stating "my wife is friends with Carlotta." Mrs. Moore had several of these run-ins with Zajko.

17. On November 4, 2008 Meg Powden conducted an observation of Mrs. Moore. Two weeks later she was given a generally positive review.

18. On November 11, 2008 Mrs. Moore notified Stan Zajko and School officials in writing about items that she felt were harassment towards her.
19. On November 24, 2008 Meg Powden again observed Mrs. Moore. Mrs. Moore asked for a meeting in Mid December to discuss the second evaluation. Ms. Powden cancelled the review and it was never rescheduled.
20. In late November Mrs. Moore began to receive reports from other staff members that there were attempts to get Mrs. Moore fired by complaining about her to superiors and that she was called a "bitch" by several other staff members.
21. In late November staff members have been reported telling people in the community that Mrs. Moore was a bad fit for the school and that she should be fired.
22. In late November Mrs. Moore spoke with Meg Powden and Diane Gilfillan, her faculty mentor, about the unprofessionalism and insubordination three para-educators had repeatedly shown. Ms. Gilfillan said it was a "witch hunt." A corrective action was requested. Meg Powden stated that she would speak with those involved in the unprofessional conduct. No follow-up occurred.
23. In late November Carlotta called Mrs. Moore to her office to meet with a parent. Carlotta disciplined Mrs. Moore in front of the parent and challenged her competency. Mrs. Moore invited Carlotta to observe Mrs. Moore as a case manager. Carlotta did not perform an observation.
24. Mrs. Moore complained about improper discipline to Meg Powden. No action was taken.
25. A third paraeducator was assigned to Mrs. Moore's classroom and informed Mrs. Moore in front of the students that she would not perform all of her duties.
26. Mrs. Moore was accused by Carlotta of asking staff to spy on other colleagues. This was reported to Meg Powden and it was confirmed by others that Mrs. Moore had not asked paraprofessionals to spy on her behalf. Meg said she would handle the situation and nothing happened.
27. In Late November 2008 Mr. Zajko confronted Mrs. Moore about an observation she had made for a student in his class. He bullied her and used his physical presence to back Mrs. Moore into a wall.
28. Mrs. Moore filed a complaint of harassment with Vice-Principal Roger Boyington and sent a copy to Mr. Zajko. Mrs. Moore informed Roger and Mr. Zajko that she suffered

from PTSD stemming from a rape Mrs. Moore endured while on serving in the military and that his actions triggered symptoms. Ruth indicated concern for her job status because of her PTSD and was told by Roger that he had no concerns over the issue, but wasn't sure how Meg would "react."

29. On December 20, 2008 Mr. Zajko apologized for his behavior the previous month. Relations improved with Mr. Zajko.

30. In January Mrs. Moore had a case management and departmental review with Ms. Powden. Ms. Powden appeared pleased with the efforts. No corrective actions were suggested and no corrective action plan was given to Mrs. Moore.

31. In January 2009, Carlotta wrote hostile e-mails to Mrs. Moore and shared them with members of the team.

32. In February while meeting with Jim Shea, and discussing a student from a broken and abusive home, Mr. Shea questioned Mrs. Moore's interpretation of the situation stating, "Are you sure you're not letting your disability affect your perceptions of this?"

33. Mrs. Moore was involved with the union to resolve three items in February, including the denial of college classes guaranteed by the teaching contract.

34. Mrs. Moore was held to different standards than co-workers with regard to paperwork associated with her duties and did not receive required Vermont SpedDoc training.

35. The Special Education Director questioned Mrs. Moore's competency in completing paperwork and claimed that Mrs. Moore misrepresented herself and skills in her interview for the position. Mrs. Moore explained that Vermont and Maine had different interpretations of federal law, and offered documentation to that effect. She then asked for formal training or a recommendation of a formal graduate level class to take and learn the Vermont Standards. None was provided or recommended.

36. Mrs. Moore made an accommodation request to be allowed to communicate more via e-mail to memorialize discussions between staff and superiors. She was told, "that is not the culture in Danville" and the request was refused.

37. In March of 2009 staff that were to receive written performance evaluations by Mrs. Moore were encouraged by the school principal to seek outside evaluations without telling Mrs. Moore. This was not communicated to Mrs. Moore and she felt her role as the special education teacher and supervisor to the paraeducators was being undermined.

When confronted with this the principal, Meg Powden, denied having given staff clearance to go around Mrs. Moore.

38. On March 20, 2009 Mrs. Moore met with Meg Powden to review observations. Meg Powden described the progress that had been made, but ultimately decided that Mrs. Moore should not be renewed for an additional probationary year citing information contained in a secret file she had been keeping on Mrs. Moore in violation of the teaching contract that she showed Mrs. Moore at that time and admitted to having to union representation at a later date.

39. Mrs. Moore reminded Ms. Powden about her PTSD and the accommodations that had been requested. Ms. Powden confirmed that she knew about the PTSD. Mrs. Moore continued to explain that she had been working with the health professionals at the Veterans Administration to develop solutions and had asked for accommodations. She also asked the school to issue a corrective action plan as per the employment contract and past practices in lieu of non-renewal in an effort to implement recommendations. Ms. Powden refused.

40. Mrs. Moore refused to sign a statement stating that she understood she was not being renewed and sought union representation.

41. On March 26, 2009 Mrs. Moore filed a harassment complaint in writing against Lisa Farnsworth, who physically assaulted her in her classroom in front of a student.

42. On March 26, 2009 Jonathan Schwartz, MD, Assistant Chief of Mental Health, VA Medical Center, wrote a letter detailing one of Mrs. Moore's diagnoses of Post Traumatic Stress Disorder ("PTSD"), and outlined specific accommodations that would benefit Mrs. Moore.

43. On March 31, 2009 Mrs. Moore was formally notified in writing that her employment contract would not be renewed for the following school year by a letter from Martha Tucker, the CCSU Superintendent.

44. The letter offered Mrs. Moore a hearing on the matter and stated that Mrs. Moore could be represented by counsel.

45. On April 2, 2009 a grievance was filed on behalf of Mrs. Moore by the Danville Education Association citing violations committed by the Danville School Board in their failure to renew Mrs. Moore's teaching contract.

46. On April 4, 2009, Mrs. Moore sent a letter to Mr. Keith Gadape, requesting a hearing regarding the non-renewal of her contract.
47. On or about April 9, 2009, Mrs. Moore was put on paid administrative leave via letter from the Danville School Principal, Meg Powden.
48. While Mrs. Moore was on administrative leave, someone at the school altered student records in SpedDoc using Mrs. Moore's account log in, indicating that she was present at IEP meetings and filling out the forms. These files were electronically signed with Mrs. Moore's name to them without her knowledge or consent.
49. A meeting with Members of the teachers union, the school principal, and Mrs. Moore was scheduled to discuss her employment situation for April 22, 2009.
50. Mrs. Moore was not mentally able to process information at the time because of acute PTSD symptoms brought on by the actions of the Danville School administration.
51. On April 22, 2009, Psychologist Sarah Kohl, wrote a letter to the Danville School supporting an accommodation request that Mrs. Moore's husband and/or attorney be allowed to assist her in the meeting.
52. Mrs. Moore, her husband, and her attorney showed up to the meeting as scheduled and presented the letter from Ms. Kohl and again presented the letter from Dr. Schwartz written on March 26, 2009 and asked for an accommodation that Mr. Moore and Mrs. Moore's attorney be allowed to assist her in the meeting. The request was denied by Meg Powden.
53. Mrs. Moore then asked if just Mr. Moore could assist her in the meeting. Meg Powden again denied that request.
54. Mrs. Moore then asked if the meeting could be postponed for 24 hours so that Ms. Powden could check with the superintendant and legal counsel to confirm that the request for assistance was a reasonable accommodation under the ADA. Ms. Powden again denied this accommodation and informed Mrs. Moore, Mr. Moore, and Mrs. Moore's attorney that the meeting would take place with or without Mrs. Moore.
55. Mrs. Moore could not stay under those conditions and left.
56. The meeting proceeded without Mrs. Moore.
57. On April 23, 2009, Mrs. Moore received a letter of suspension from Superintendant Martha Tucker.

58. On April 23, 209, Mr. Alfred Moore, wrote a complaint letter to Principal Meg Powden regarding several instances of inappropriate treatment of the Moore's daughter S.M. at the school.
59. Mr. Moore was also placed on suspension the next day.
60. On April 28, 2009 the school district received a letter from Kevin Cole, M.E.d. from the Veterans Medical Hospital that Mrs. Moore was having health problems and he advised that she remain on paid administrative leave until further evaluation determined otherwise.
61. On April 30, 2009, Mrs. Moore wrote a similar letter to her husband's outlining several complaints regarding her daughter's education.
62. On May 20, 2009, Mrs. Moore was removed from administrative leave and placed on Medical leave.
63. Mr. Moore was forced to remain on administrative leave for the rest of the school year. He was allowed to return to work for the next school year, after which he was informed that he would not be renewed for the following year.
64. Mrs. Moore filed a complaint with the Equal Employment Opportunities Commission and has received a right to sue letter. A copy is attached to this complaint.

### COUNT I- CCSU and the Danville School failed to provide a reasonable accommodations for Mrs. Moore.

65. This incorporates paragraphs 1-64
66. Mrs. Moore asked CCSU and the Danville School for several accommodations to allow her to engage more effectively with peers and supervisors.
67. The CCSU and the Danville School failed to provide accommodations.
68. The CCSU and the Danville School did not find any undue hardship or claim that the accommodation requests were unreasonable.
69. Failure to provide accommodations impacted Mrs. Moore's ability to perform her duties.

### COUT II- CCSU and the Danville School created a hostile work environment.

70. This incorporates paragraphs 1-69 above.

71. CCSU and the Danville School failed to take actions necessary to respond to claims of abuse or harassment made by Mrs. Moore to the administration.
72. Failure to properly enforce harassment procedures lead to a hostile work environment for Mrs. Moore.

### COUNT III- CCSU and the Danville School treated Mrs. Moore differently in performance reviews and disciplinary matters.

73. This incorporates paragraphs 1-72 above.
74. CCSU and the Danville School failed to follow established guidelines Mrs. Moore's performance reviews that were followed for other employees, including Mrs. Moore's husband.
75. CCSU and the Danville School did not make reasonable accommodations for the performance reviews.
76. CCSU and the Danville School treated other staff differently than Mrs. Moore in handling reviews and disciplinary matters.

### COUNT IV- CCSU and the Danville School discriminated against Mrs. Moore by failing to make reasonable accommodations in their termination proceedings.

77. This incorporates paragraphs 1-76 above
78. CCSU and the Danville School failed to make reasonable accommodations as requested by medical professionals, Mrs. Moore, and her family at the time her employment status was under review.
79. CCSU and the Danville School refused to allow Mrs. Moore to have the assistance of family or counsel at meetings as requested by her health care providers at the Veterans Administration.
80. The Danville School made no claims of undue hardship or that her requests were unreasonable.

### COUNT V- CCSU and the Danville School Engaged in Retaliation against Mrs. Moore.

81. This incorporates paragraphs 1-80 above.
82. Mr. and Mrs. Moore made complaints about potential harassment of their daughter S.M. at school.
83. Mr. Moore assisted Mrs. Moore in her day to day living.
84. Mr. Moore was present at meetings and advocated for his wife as she was dealing with her disability at work.
85. Mrs. Moore's husband was targeted for investigation by the CCSU and the Danville School.
86. Mr. Moore was also put on administrative leave. The implication was to leave it alone or both parties would be fired. These actions constitute illegal retaliation.
87. The focus on Mr. Moore caused significant concern and hardship on Mrs. Moore and her family.

**WHEREFORE,** Plaintiff requests a trial by jury and demands judgment against Defendant as follows:

   A) Attorney's fees and costs.

   B) Monetary damages in the amount of $2,600,000.00

   C) Such further relief as this court deems just and proper.

DATED at St. Johnsbury, Vermont, this 23rd day of November, 2011.

BY: _____
Aaron R. Melville, Esq.
P.O. Box 188
107 Eastern Avenue
St. Johnsbury, VT 05819
(802) 745-1230
aaron@melvilleesquire.com
Attorney for Plaintiff


DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that she has read the above complaint and that the information contained therein is true and correct.

Executed at _Milbridge, ME_ on November _22_ 2011.
       (Location)                    (Date)

_Ruth Moore_
(Signature of Plaintiff)